UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

| | |
|---|---|
| Kara Seldin-Howell and Kolton Howell<br><br>     *Plaintiffs,*<br><br>  v.<br><br>CNY Fertility, PLLC<br><br>  and<br><br>CNY Fertility Colorado, PLLC<br><br>     *Defendants.* | |
| **Plaintiffs' Complaint with Jury Demand** ||

NATURE OF ACTION

1. Plaintiffs Kara Seldin-Howell and Kolton Howell seek to recover for Defendants' grossly negligent and reckless acts and omissions that destroyed their seven embryos at the CNY Fertility Colorado clinic in Colorado Springs, Colorado.

PARTIES

2. Plaintiff Kara Seldin-Howell is a resident of Pierce County, Washington.

3. Plaintiff Kolton Howell is a resident of Pierce County, Washington.

4. Defendant CNY Fertility, PLLC is a New York professional limited liability company that operates the CNY Fertility Colorado clinic, where its employees and/or CNY Fertility Colorado PLLC's employees destroyed Kara and Kolton's embryos.

5. Defendant CNY Fertility Colorado, PLLC is a Colorado professional limited liability company that operates the CNY Fertility Colorado clinic, where its employees and/or CNY Fertility, PLLC's employees destroyed Kara and Kolton's embryos.

## JURISDICTION AND VENUE

6. The Court has diversity jurisdiction under 28 U.S.C. § 1332 because this is a civil action arising between citizens of different states and the amount in controversy exceeds $75,000.

7. The Court has personal jurisdiction over both Defendants, who do business and have registered agents for service of process in the State of Colorado.

8. Venue is proper in this Court because Defendants' actions giving rise to the claims took place in Colorado Springs, Colorado, which is within this jurisdiction.

## FACTUAL BACKGROUND

### Plaintiffs undergo in-vitro fertilization at the CNY Fertility Colorado clinic.

9. In 2021, Kara and Kolton sought fertility treatment from Dr. Paul Magarelli at the CNY Fertility Colorado clinic. Based on their medical conditions and the recommendations of their treating physicians, the couple decided to pursue in-vitro fertilization ("IVF").

10. IVF requires a woman to take medication to stimulate her ovaries so multiple eggs will mature. A physician then surgically retrieves the matured eggs, which are placed in a Petri dish to be fertilized with sperm.

11. According to CNY Fertility's website, "[a]fter fertilization, the embryos are grown in nourishing media that mimics the internal environment of a fallopian tube (where early embryonic development naturally occurs for 3-5 day [sic] or until the embryo reaches a cleavage or blastocyst stage."[1]

12. Plaintiffs planned to have pre-implantation genetic testing performed on their embryos and have them frozen for subsequent transfer to Kara's uterus. Pre-implantation genetic testing,

---

[1] CNY Fertility, *Fertility Treatments: IVF – In Vitro Fertilization*, WWW.CNYFERTILITY.COM, https://www.cnyfertility.com/ivf/ (last visited Apr. 19, 2022).

according to CNY Fertility, is performed three to five days after fertilization on a blastocyst-stage embryo.[2]

13.     On May 5, 2021, Dr. Magarelli performed an egg-retrieval procedure on Kara.

14.     Using Kara's eggs and Kolton's sperm, CNY Fertility-employed embryologists created seven embryos in CNY Fertility's on-site laboratory at CNY Fertility Colorado.

15.     When a CNY Fertility nurse called on May 6, 2021 to relay the good news, Plaintiffs were elated to learn they would have seven embryos to create their dream family of two-to-three children. They believed their children were among those embryos and eagerly awaited the results of the pre-implantation genetic testing so they could begin planning the transfer.

### CNY Fertility negligently caused all seven of Kara and Kolton's treasured embryos to dry out and die.

16.     Tragically, Plaintiffs' embryos did not make it to the genetic-testing stage. On May 8, 2021, Dr. Magarelli called Kara and advised that CNY Fertility had destroyed all seven of the couple's embryos.

17.     In that call, Dr. Magarelli admitted to Kara that CNY Fertility was at fault for the loss of the embryos. He reassured her that this catastrophe was not her or Kolton's fault and promised to investigate how and why CNY Fertility had caused this disaster.

18.     On May 11, 2021, Dr. Magarelli called Kara with the results of his investigation. He explained that CNY Fertility's in-house laboratory professionals had failed to properly place an oil medium—the same "nourishing media that mimics the internal environment of a fallopian tube"

---

[2] CNY Fertility, *Fertility Treatment: The Basics of Preimplantation Genetic Testing*, WWW.CNYFERTILITY.COM, https://www.cnyfertility.com/genetic-testing/ (last visited Apr. 19, 2022).

described on CNY Fertility's website—to preserve the embryos and facilitate their growth. By failing to properly place the oil medium in the Petri dish, CNY Fertility caused the embryos to dry out and die. The CNY Fertility embryology "Gamete Sheet" (attached as Exhibit 1) confirms Dr. Magarelli's finding: "[a]t day 3 move, all media and embryos were completely dried out. No oil was in the dish."

19. Defendants destroyed all seven embryos before pre-implantation genetic testing could be performed.

20. Dr. Magarelli reiterated to Kara in this call that CNY Fertility was at fault for failing to utilize the medium.

21. Dr. Magarelli also told Kara that, as a result of this disaster, the CNY Fertility Colorado clinic implemented a new procedure to "double-check" embryos after creation to ensure proper culture conditions, prompting Kara to wonder why a purportedly "state of the art" embryology laboratory would not already have a "double-check" procedure in place.

22. To develop, pre-implantation embryos require consistent culture conditions, including proper temperature, pH, and osmolality. Embryologists must place and maintain culture media to ensure culture conditions conducive to growth.

23. For more than 40 years, the standard of care in assisted-reproductive healthcare has been to place oil overlays in embryo culture dishes for the specific purpose of preventing culture evaporation, the precise adverse outcome that occurred here.

24. The types of oils used for for oil overlays in IVF (including the most commonly used, mineral oil) do not evaporate. The absence of oil in the embryo-culture dish means that CNY Fertility never placed oil in the dish—and failed to notice the omission for three days.

25. It was highly foreseeable that failing to place an oil medium over Plaintiffs' embryos would result in embryo-culture evaporation and the loss of all seven embryos.

26. Defendants, through their employee(s), breached this foundational duty of care to preserve the embryos using an appropriate culture medium.

27. Defendants, through their employee(s), breached their duty of care to monitor and care for the embryos.

28. On information and belief, the CNY Fertility employees responsible for placing culture medium and monitoring embryos in the laboratory are medical laboratory technicians, medical technologists, and/or certified laboratory scientists who were certified by national organizations, such as the American Society for Clinical Pathology. On information and belief, the responsible CNY Fertility laboratory employees were not professionals required to be licensed by the State of Colorado.[3]

29. Defendants never advised Kara and Kolton that this outcome—embryo-culture evaporation caused by failing to place the oil overlay—was possible because it is not an accepted risk of the procedure.

30. Kara experienced physical pain from the various injections, blood draws, and the egg-retrieval procedure—all of which she suffered for no reason, due to Defendants' misconduct.

31. Plaintiffs have suffered economic losses from paying substantial sums to Defendants and other medical providers for medical treatment and services, all of which were rendered useless as a result of Defendants' misconduct.

---

[3] In the event that Plaintiffs learn that a physician or other medical provider subject to Colorado's professional-licensure laws was at fault in this matter, Plaintiffs will amend the complaint and provide a certificate of review as required by C.R.S. § 13-20-602.

32. Plaintiffs have suffered severe emotional trauma as a result of CNY Fertility's betrayal, which constitutes, at a minimum, gross negligence.

33. This incident would not have happened but for Defendants' negligence.

### CLAIM 1: NEGLIGENCE

34. Plaintiffs incorporate all allegations.

35. At all times relevant, the standard of care for IVF required using culture media to maintain consistent culture conditions and prevent embryo-culture evaporation, as required for embryo growth and development.

36. Defendants had a duty to meet this standard of care for Plaintiffs.

37. Defendants, whose principals and employees are medical providers and physicians, had duties of care to Plaintiffs under the law that were independent of any duties imposed by contract. The special relationship between Plaintiffs and Defendants triggered duties of care that would render Defendants liable in tort actions.

38. Defendants breached their duty to meet the standard of care to Plaintiffs by failing to ensure the use of culture media, causing Plaintiffs' embryos to dry out and die.

39. Defendants owed Plaintiffs a duty to exercise care regarding the creation and preservation of their embryos.

40. Defendants, through their employees, breached those duties and/or were negligent in one or more of the following acts or omissions:

   a. Failing to train CNY Fertility employees regarding how to place culture media in embryo-culture dishes;

   b. Failing to supervise CNY Fertility employees to ensure that an employee placed culture media in Plaintiffs' embryos' Petri dishes;

  c. Failing to train CNY Fertility employees regarding how to monitor developing embryo cultures;

  d. Failing to supervise CNY Fertility employees charged with monitoring Plaintiffs' developing embryo cultures;

  e. Failing to properly safeguard and protect Plaintiffs' seven embryos;

  f. Failing to follow known scientific and laboratory procedures for developing embryos; and

  g. Acting otherwise carelessly or negligently toward Plaintiffs and their embryos.

41. Defendants were also grossly negligent and/or reckless for failing to exercise any or very slight care through one or more of the above-listed acts or omissions. Defendants acted willfully and/or wantonly with a conscious or reckless disregard for the rights of Plaintiffs that had a great probability of causing—and did cause—substantial harm.

42. The doctrine of *res ipsa loquitur* applies in this case to create a rebuttable presumption that Defendants were negligent. The event in question—embryo-culture evaporation because nobody placed oil in the Petri dish to facilitate embryo growth—would not have occurred without the negligence of one or more Defendants or their employee(s), and no other causes or justification for this event exist. In addition, the presumed negligence (failing to ensure that an oil medium was placed in the embryos' Petri dish) was within the scope of the duties Defendants owed to Plaintiffs in the course of providing IVF treatment and services.

43. As a result of one or more of Defendants' negligent and/or grossly negligent acts and/or omissions, Plaintiffs suffered and continue to suffer damages proximately caused by Defendants' breaches of their duties in a manner and in an amount to be determined at trial.

44. Plaintiffs' damages include noneconomic damages for the emotional distress Plaintiffs endured, including but not limited to the emotional distress Kara experienced arising from the physical pain and discomfort associated with the side effects from the various medications, injections,

blood draws, and the egg-retrieval procedure, all of which were rendered pointless by Defendants' gross negligence.

45. With this negligence claim, Plaintiffs specifically seek damages representing the value of the seven embryos themselves, as distinct from the value of the medical treatment and services for which Plaintiffs paid Defendants and other providers, and as distinct from the value of the additional medical treatment and services Plaintiffs were required to undergo because of Defendants' negligence. The embryos themselves had independent value.

46. Current Colorado law classifies Plaintiffs' seven embryos as marital property of a special character, in recognition of the fact that embryos contain the potential for human life and are created using the genetic material of two individuals who have significant interests in the embryos' disposition. *In re Marriage of Rooks*, 429 P.3d 579, 591 (Colo. 2018).

47. Under Colorado law, individuals' constitutional rights to reproductive choice and autonomy include the right to make decisions about embryos created from their genetic material. *In re Marriage of Fabos and Olsen*, 451 P.3d 1218, 1226 (Colo. Ct. App. 2019); citing *Davis v. Davis*, 842 S.W. 2d 588, 601–03 (Tenn. 1992), and *Rooks*, 429 P.3d at 586. Defendants' gross negligence robbed Kara and Kolton of their right to exercise control over their embryos.

48. The Plaintiffs' seven embryos could not be repaired after the embryo-culture evaporation and dehydration.

49. Colorado law does not assign a monetary value to embryos.

50. No contract exists between Plaintiffs and Defendants that sets the monetary value or "replacement value" of any embryos Defendants created using Plaintiffs' genetic material.

51. Plaintiffs' seven embryos, by their nature, are non-fungible and cannot be replaced because each embryo represented a unique combination of the Plaintiffs' genetic material that can never be recreated, even if Plaintiffs succeeded in having other embryos created. Further, these seven embryos are irreplaceable because they were created from younger genetic material than any future embryos would be.

52. With this negligence claim, Plaintiffs also seek noneconomic damages for their lost use and enjoyment of the embryos, as Colorado law permits, including but not limited their annoyance, discomfort, inconvenience, fear, lost peace of mind, lost well-being, and lost physical and mental health.

53. Plaintiffs also seek all other noneconomic damages for which they may recover, including exemplary damages

54. By failing to exercise even the slightest degree of care, acting recklessly, and deliberately disregarding the safety of Kara and Kolton's embryos, Defendants were grossly negligent and/or engaged in willful and wanton misconduct.

55. To the extent that any employee of either Defendant breached the standard of care, the employer-Defendant is vicariously liable for the negligence of its employee(s).

56. As a direct and proximate result of Defendants' deviation from and breach of the standard of care for IVF and the ordinary duty of care as applicable to the laboratory setting, Plaintiffs have suffered past and future economic and non-economic damages.

### CLAIM 2: NEGLIGENT HIRING, TRAINING, AND/OR SUPERVISION

57. Plaintiffs incorporate all allegations.

58. Defendants employed one or more laboratory professionals who were responsible for ensuring appropriate embryo-culture conditions and monitoring the embryos to ensure proper growth and development.

59. The laboratory professionals employed by Defendants failed to ensure that culture conditions remained consistent and failed to properly monitor the embryos for the three days after they were created.

60. Defendants negligently failed to properly hire, train, and supervise its employees through one or more of the following acts or omissions:

   a. Hiring embryologists and/or laboratory professionals who were not competent to place culture media in embryo-culture dishes;

   b. Failing to train CNY Fertility employees regarding how to place culture media in embryo-culture dishes;

   c. Failing to supervise CNY Fertility employees to ensure that an employee placed culture media in Plaintiffs' embryos' Petri dish(es);

   d. Hiring embryologists and/or laboratory professionals who were not competent to monitor developing embryo cultures;

   e. Failing to train CNY Fertility employees regarding how to monitor developing embryo cultures;

   f. Failing to supervise CNY Fertility employees charged with monitoring Plaintiffs' developing embryo cultures;

   g. Otherwise failing to properly hire, train, and supervise employees to uphold the duties of care CNY Fertility owed to Plaintiffs.

61. Had the embryologists and/or other laboratory professionals been properly hired, trained, and/or supervised, they would have placed the appropriate culture medium to prevent Plaintiffs' embryos from dehydrating and evaporating.

62. To the extent that any employee of either Defendant breached the duties owed to Plaintiffs, the employer-Defendant is vicariously liable for the negligence of its employee(s).

63. Defendants' hiring, training, and/or supervision of such embryologists and laboratory professionals proximately caused the destruction of Plaintiffs' embryos and damages in an amount to be determined at trial.

64. By failing to exercise even the slightest degree of care, acting recklessly, and deliberately disregarding the safety of Kara and Kolton's embryos, Defendants were grossly negligent and/or engaged in willful and wanton misconduct.

65. Plaintiffs seek recovery of economic damages, noneconomic damages, and exemplary damages for Defendants' negligent hiring, training, and/or supervision of their laboratory employees.

### CLAIM 3: BREACH OF CONTRACT

66. Plaintiffs incorporate all allegations.

67. Plaintiffs entered a written contract with Defendants titled "Consent for In Vitro Fertilization," which was drafted entirely by CNY Fertility and executed by Kara and Kolton on April 10, 2021.

68. In this written contract, Plaintiffs authorized Defendants to perform in-vitro fertilization, embryo cryopreservation, pre-implantation genetic testing, and embryo transfer.

69. Defendants failed to perform their contractual obligations after creating the embryos.

70. The contract stated that Defendants would perform in-vitro fertilization as follows: "the recovered egg cells are placed into a synthetic culture medium with sperm cells[.]" On information and belief, Defendants did not place any culture medium or did not place a sufficient amount of culture medium to ensure that the embryos continued developing.

71. Defendants' obligation to perform IVF competently under the contract required Defendants to place an appropriate type and amount of culture medium in embryos' Petri dish. Defendants did not do so.

72. By failing to care for and monitor the embryos they created, Defendants failed to take any steps to cryopreserve the embryos, send the embryos for pre-implantation genetic testing, or transfer the embryos to Kara's uterus.

73. Plaintiffs performed all terms, conditions, and promises required of them under their contracts. This included paying substantial sums to Defendants for fertility services, paying other medical providers for monitoring, undergoing required testing, taking required medication, traveling to the CNY Fertility Colorado Clinic, and more.

74. Defendants and/or their employees, for whose acts and omissions Defendants are vicariously liable, failed to properly care for and monitor Plaintiffs' embryos, thus breaching their contractual obligations to Plaintiffs and causing them damages in an amount to be determined at trial. Plaintiffs seek recovery of all damages to which they are legally entitled.

### CLAIM 4: BAILMENT OF GENETIC MATERIAL

75. Plaintiffs incorporate all allegations.

76. Plaintiffs delivered to Defendants for safekeeping their personal property, consisting of their genetic material, to be safely and securely kept and used as directed or redelivered to them on demand. Defendants accepted Plaintiffs' genetic material into their care and custody. The provision of the genetic material to Defendants formed a bailment.

77. Defendants accepted delivery of Plaintiffs' genetic material and did not return it because Defendants destroyed it.

78. Under Colorado law, Defendants had a duty to exercise reasonable care to protect Plaintiffs' genetic material.

79. Defendants invited the general public, including Plaintiffs in particular, to entrust genetic material to their care and custody by holding themselves out to be competent, capable, and

established reproductive facility able to handle and care for genetic materials and the resulting embryos in a satisfactory manner. Indeed, CNY Fertility Colorado's website proudly proclaims that it is "home to one of our state-of-the-art embryology labs."[4]

80. Defendants caused the destruction of the genetic material that Plaintiffs had entrusted to them. As a result, Defendants breached their duty to exercise ordinary care in the safekeeping of their genetic material and have failed to redeliver it to them.

81. Because Defendants accepted the delivery of Plaintiffs' genetic material and then failed to return it after destroying it, Colorado law presumes that Defendants were negligent in destroying Plaintiffs' genetic material.

82. Defendants are vicariously liable for any act or omission of their employee(s) in accepting delivery of Plaintiffs' genetic material and failing to return it.

83. As a result of Defendants' wrongful conduct, Plaintiffs were deprived of their genetic material and have suffered and continue to suffer damages in an amount to be determined at trial. Plaintiffs seek recovery of all damages to which they are legally entitled.

### CLAIM 5: PROMISSORY ESTOPPEL (ALTERNATIVE CLAIM)

84. Plaintiffs incorporate all allegations.

85. Plaintiffs plead this claim as an alternative to their breach-of-contract claim.

86. Defendants made a clear and unambiguous promise to Plaintiffs that their laboratory professionals would care for and monitor Plaintiffs' embryos to ensure proper growth and development based on the applicable standard of care.

---

[4]  CNY Fertility, *CNY Fertility Colorado*, WWW.CNYFERTILITY.COM, https://www.cnyfertility.com/location/cny-fertility-colorado/(last visited Feb. 9, 2022).

87. Plaintiffs relied on that promise when they agreed to undergo IVF at CNY Fertility Colorado.

88. Their reliance was reasonable and foreseeable, as they had no reason to question Defendants' representations that they would properly care for and monitor Plaintiffs' embryos.

89. As a result of their reliance on representations by Defendants (and/or their employees, for whose acts Defendants are vicariously liable), Plaintiffs were injured and suffered damages in an amount to be determined at trial. Plaintiffs seek recovery of all damages to which they are legally entitled.

### CLAIM 6: LACK OF INFORMED CONSENT (ALTERNATIVE CLAIM)

90. Plaintiffs incorporate all allegations.

91. Plaintiffs plead this claim as an alternative to their negligence claim.

92. Defendants were responsible for advising Plaintiffs of the material risks and dangers inherently and potentially involved in the IVF procedure.

93. On information and belief, the risk that a laboratory professional would fail to place any culture medium over developing embryos is not a material risk and danger inherently involved in the IVF procedure. But, should the Court determine that such action by Defendants was a material risk inherent to IVF, Plaintiffs claim, in the alternative, that Defendants failed to secure informed consent to undergo the procedure subject to this risk.

94. At no time did Defendants disclose to Plaintiffs that Defendants might fail to place culture media in the embryo-culture dish nor that this failure could cause the embryos to dry out and die.

95. This unrevealed risk and danger, which should have been disclosed by Defendants, actually occurred and proximately caused injury to Plaintiffs, and they suffered damages in an amount to be determined at trial.

96. Reasonable people in Plaintiffs' position would have decided against pursuing IVF with CNY Fertility if they had been advised that one of CNY Fertility's embryologists or another professional could breach the basic duty of care to preserve embryos using culture media.

97. To the extent that any employee of either Defendant failed to obtain informed consent from Plaintiffs, the employer Defendant is vicariously liable for the negligence of its employee(s).

98. As a direct and proximate result of Defendants' failure to disclose this risk and obtain informed consent from Plaintiffs, Plaintiffs have suffered past and future economic and non-economic damages. Plaintiffs seek recovery of all damages to which they are legally entitled.

## PRAYER FOR RELIEF

Plaintiffs respectfully pray for the following:

- Declare Defendants liable for the claims asserted above;
- Damages in an amount to be determined at trial;
- Pre- and post-judgment interest;
- Costs of suit incurred;
- Such other relief as the law and evidence may justify, and that this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.

Respectfully submitted,

| | |
|---|---|
| */s/Ashlie Case Sletvold* | |
| Ashlie Case Sletvold | Adam B. Wolf |
| Jessica S. Savoie | **PEIFFER WOLF CARR KANE** |
| **PEIFFER WOLF CARR KANE** | **CONWAY & WISE, LLP** |
| **CONWAY & WISE, LLP** | 5042 Wilshire Boulevard, No. 304 |
| 1422 Euclid Avenue, Suite 1610 | Los Angeles, California 90036 |
| Cleveland, Ohio 44113 | Phone: 415.766.3545 |
| Phone: 216.589.9280 | Fax: 415.402.0058 |
| Fax: 504.608.1465 | awolf@peifferwolf.com |
| asletvold@peifferwolf.com | |
| jsavoie@peifferwolf.com | |

*Counsel for Plaintiffs Kara Seldin-Howell and Kolton Howell*